UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT

Northern District of California

| | |
|---|---|
| BOARD OF TRUSTEES OF THE CLERKS AND LUMBER HANDLERS PENSION FUND,<br><br>Plaintiff,<br>v.<br>PIEDMONT LUMBER & MILL CO., INC.,<br><br>Defendant._____ / | No. C 10-1757 MEJ<br><br>**ORDER FOR CLERK OF COURT TO REASSIGN CASE**<br><br>**REPORT & RECOMMENDATION RE: DEFAULT JUDGMENT MOTION** |

## I. INTRODUCTION

Before the Court is Plaintiff Board of Trustees of the Clerks and Lumber Handlers Pension Fund's Motion for Default Judgment. (Dkt. #11.) As Defendant Piedmont Lumber & Mill Company has failed to respond to the motion or otherwise appear in this case, the Court hereby VACATES the December 2, 2010 hearing and ORDERS the Clerk of Court to reassign this case to a United States District Judge with the following Report & Recommendation.

## II. BACKGROUND

Plaintiff Board of Trustees ("Plaintiff" or the "Board") of the Clerks and Lumber Handlers Pension Fund (the "Pension Fund") is, and at all relevant times was, the plan administrator and plan sponsor for the Clerks and Lumber Handlers Pension Plan (the "Plan"). (Compl., ¶ 4, Dkt. #1.) The Plan is, and at all relevant times was, a multi-employer plan and employee benefit plan within the meaning of Sections 3(2), 3(3), and 3(37) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA") (29 U.S.C. §§ 1102(1) or 1102(2), 1102(3), and 1102(37)). *Id.*

Defendant Piedmont Lumber & Mill Company, Inc. ("Defendant" or "Piedmont Lumber") is an employer that participates in the Plan. *Id.* at ¶ 5. Piedmont Lumber entered into a collective

bargaining agreement with the Clerks and Lumber Handlers Local 886, which was effective July 1, 1996, as amended (the "CBA"). *Id.* at ¶ 6. The CBA obligates Piedmont Lumber to, among other things, pay to the Pension Fund a contribution amount for every hour worked by its employees, which is referred to as the "Required Contribution Rate." In 2009, the Required Contribution Rate was thirty cents ($.30) for every hour worked by its employees. In 2010, the Required Contribution Rate increased to forty cents ($.40) for every hour worked. *Id.* at ¶ 7.

The CBA provides that Piedmont Lumber is bound to the provisions of the Trust Agreement of the Clerks and Lumber Handlers Pension Fund (the "Trust Agreement"). *Id.* at ¶ 8. Under Article III, Section 1 of the Trust Agreement, participating employers are required to make contributions to the Pension Fund on or before the tenth (10th) day of each month. *Id.* at ¶ 9. Pursuant to Article III, Section 1 of the Trust Agreement, participating employers are required to submit to the Pension Fund (a) contributions covering the hours worked by its employees during the prior month computed at the Required Contribution Rate set forth in the CBA and (b) a report of hours worked by its employees for that month. *Id.* at ¶ 10. Under Article III, Section 1 of the Trust Agreement, contributions are considered delinquent if due but unpaid after the tenth (10th) day of the month in which the contribution to the Pension Fund is payable. *Id.* at ¶ 11.

Article III, Section 2 of the Trust Agreement provides that if a participating employer fails to make the contributions due to the Pension Fund on or before the tenth (10th) day of the month in which they are due, the employer must pay the following amounts to the Pension Fund: (1) interest on the unpaid contributions at the rate of twelve percent (12%) per annum from the tenth (10th) day of the month in which the contribution became delinquent until the date the contributions are paid to the Pension Fund, and (2) an amount equal to the greater of (a) an amount equal to the interest payable pursuant to (1) herein, or (b) liquidated damages in an amount equal to twenty percent (20%) of the unpaid contributions. *Id.* at ¶ 12.

Under Article III, Section 2 of the Trust Agreement, a participating employer also becomes liable for attorney's fees incurred by the Pension Fund in connection with a participating employer's delinquency, regardless of whether legal or arbitration proceedings are instituted, plus court costs.

2

The participating employer is also liable for any audit fees incurred by the Pension Fund in connection with the participating employer's delinquency. *Id.* at ¶ 13.

Plaintiff maintains Contribution and Delinquency Rules and Procedures ("Delinquency Procedures") for the Plan that are provided to all participating employers. *Id.* at ¶ 15. The Delinquency Procedures reiterate the delinquency provisions provided for in the CBA and Trust Agreement. *Id.* at ¶ 16. The Pension Fund administrator provided a copy of the Delinquency Procedures to Defendant, and thus, Defendant was on notice of its obligations pursuant to the Delinquency Procedures, the CBA, and the Trust. *Id.* at ¶ 17.

Defendant failed to make contributions to the Pension Fund from November 2009 through March 2010, and to pay interest and liquidated damages on all delinquent contributions to the Pension Fund from September 2009 through March 2010 as required by under the CBA and the Trust Agreement. *Id.* at ¶ 18. Based on the monthly reports of hours worked by Defendant's employees each month, and under the CBA, Trust Agreement, and Delinquency Procedures, Defendant currently owes the Pension Fund the following:

    a.    Approximately $27,068.85 in past due contributions for November 2009 through March 2010 (*see* Delinquency Calculations, Exhibit 1, Dkt. #20);

    b.    Approximately $2,859.90 in interest calculated based on an interest rate of twelve percent (12%) from the delinquency date through November 18, 2010 on all past due contributions from September 2009 through March 2010 (*see id.*);

    c.    All interest that has accrued since November 18, 2010 until the past due contribution amount is paid to the Pension Fund;

    d.    Approximately $8,311.81 in liquidated damages calculated based on a liquidated damages rate of twenty percent (20%) from the delinquency date through November 18, 2010 on all past due contributions from September 2009 through March 2010 (*see id.*);

    e.    All liquidated damages that have accrued since November 18, 2010 until the past due contribution amount is paid to the Pension Fund; and

       f.      Attorney's fees and court costs incurred from March 1, 2010 through November 18, 2010.

*Id.* at ¶ 19.

According to Plaintiff, sometime in March 2010, all employees of Piedmont Lumber ceased performing work covered under the CBA for which Defendant owes contributions to the Pension Fund. *Id.* at ¶ 20. As a result of the delinquent contributions, liquidated damages, interest, and attorney's fees owed by Piedmont Lumber, the Board filed the present Complaint against Piedmont Lumber on April 23, 2010, and Defendant agreed to waive service of process on June 25, 2010. *See* Dkt. #1 and #6. Plaintiff brought this action against Defendant under Section 302 of the Labor Management Relations Act, as amended ("LMRA"), 29 U.S.C. § 186, and Sections 502 and 515 of ERISA, 29 U.S.C. §§ 1132 and 1145. (Compl., Dkt. #1.)

Because Defendant did not file a responsive pleading, Plaintiff requested an entry of default against Defendant, which was entered by the Clerk of Court on September 2, 2010. *See* Dkt. #7 and #9. Plaintiff subsequently filed the present Motion for Default Judgment on October 15, 2010. (Dkt. #11.) Defendant did not respond to Plaintiff's Motion for Default Judgment, and has not otherwise appeared in this matter since the waiver of service.

## III. DISCUSSION

**A.    Legal Standard**

Pursuant to Federal Rule of Civil Procedure 55(b)(2), following default by a defendant, a district court may enter default judgment in a case. It is well-settled that the district court's decision whether to enter default judgment is discretionary. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). To assist courts in determining whether default judgment in appropriate, the Ninth Circuit has enumerated the following factors for courts to consider: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of dispute concerning material facts; (6) whether the defendant's default was due to excusable neglect and; (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d

4

1470, 1471-72 (9th Cir. 1986).

Upon entry of default, the Court accepts all factual allegations within the complaint as true, except those allegations relating to the amount of damages. *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987). Concurrently, Federal Rule of Civil Procedure 54(c) provides that, "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Thus, where a default judgment is granted, the scope of relief is limited to that requested in the plaintiff's complaint.

**B.     Jurisdiction**

When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). Here, the Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 and ERISA § 502(e) because the claims arise solely under federal law. The Court also has personal jurisdiction over this case because the Plan is administered in this judicial district and payment of contributions to the Pension Fund is also made within this judicial district, and Piedmont Lumber resides and does business within this judicial district. (Compl. ¶ 2.)  And, as Defendant waived service of process, proper service is not at issue.

**C.     Application of the *Eitel* Factors**

The undersigned next turns to application of the seven *Eitel* factors to determine whether entry of default judgment is appropriate in this matter.

    1.     Prejudice to Plaintiffs

Under the first *Eitel* factor, this Court examines whether Plaintiff will suffer prejudice if default judgment is not granted. *Eitel*, 782 F.2d at 1471. Here, the evidence presented shows that Plaintiff will be prejudiced if the Court does not enter default judgment against Defendant because Plaintiff has no other recourse for collecting the past due contributions owed to the Pension Fund. If these contributions are not covered, future benefits for Plan participants and their beneficiaries may be put at risk if the Plan is under funded. Thus, denial of Plaintiff's request for entry of default

judgment would substantially prejudice Plaintiff by preventing it from recovering against Defendant.

### 2. Sufficiency of the Complaint and Likelihood of Success on the Merits

The second and third *Eitel* factors address the sufficiency of Plaintiff's complaint and the probability of its success on the merits of its claims. *Eitel*, 782 F.2d at 1471. The evidence presented shows that Plaintiff has pled a meritorious claim. Defendant was obligated under the terms of the CBA to make contributions to the Pension Fund and failed to do so from November 2009 through March 2010. Therefore, Piedmont Lumber is in clear violation of the terms of the CBA, the Trust Agreement, and the Delinquency Procedures.

Further, Plaintiff's Complaint is legally sufficient because all of the elements of an ERISA § 515 violation have been pled. ERISA § 515 provides that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145. Here, the Complaint alleges that Piedmont Lumber is (1) an employer (2) who is obligated under the terms of the CBA to make contributions to the Plan, an ERISA multi-employer plan, and (3) failed to make contributions from November 2009 through March 2010. Because all of the elements of an ERISA § 515 violation have been properly alleged, the Complaint is legally sufficient and there can be no question that Plaintiff is likely to succeed on the merits of its claim.

### 3. The Sum of Money at Stake in the Action

The fourth *Eitel* factor assesses the reasonableness of the potential award if a default judgment is entered against Defendant. *Eitel*, 782 F.2d at 1471. In making this evaluation, the Court must take into account the amount of money at stake in relation to the seriousness of the defendant's conduct. *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1176 (C.D. Cal. 2002). If the sum of money at issue is reasonably proportionate to the harm caused by the defendant's actions, properly documented, and contractually justified, then default judgment is warranted. *Bd. of Trustees of Cal. Metal Trades v. Pitchometer Propeller*, No. C 97-2661, 1997 WL 797922, at *1 (N.D. Cal. Dec. 15, 1997).

Here, the amount of money at stake in this litigation is significant. As of November 18, 2010, Piedmont Lumber owes $38,240.56 in past due contributions, interest and liquidated damages. In addition, as discussed below, Piedmont Lumber owes attorney's fees and costs incurred by the Pension Fund in pursuing this litigation. If these contributions and attorney's fees are not covered, future benefits for Plan participants and their beneficiaries may be put at risk if the Plan is under funded. Thus, the damages Plaintiff seeks are proportionate to the harm Defendant caused, are justified under the Policy, and are properly documented. This factor therefore favors entry of default judgment against Defendant.

### 4. Possibility of Dispute Concerning Material Facts

The fifth *Eitel* factor examines the possibility of dispute as to any material facts of the case. *Eitel*, 782 F.2d at 1471-72. Here, because Piedmont Lumber submitted reports for hours worked by covered employees from November 2009 through March 2010, there is no dispute as to the amount of delinquent contributions owed. (Dkt. #20, Ex. 1.) Accordingly, the undersigned finds that this factor weighs in favor of entry of default judgment.

### 5. Possibility of Excusable Negligence

The sixth *Eitel* factor examines whether Defendant's failure to respond to Plaintiff's Complaint was the result of excusable neglect. *Id.* at 172. In this case, Piedmont Lumber was aware of Plaintiff's complaint filed against it and voluntarily waived service. Therefore, Piedmont Lumber consciously decided not to respond to Plaintiff's Complaint and Motion for Default Judgment. Therefore, this factor weighs in favor of entry of default judgment.

### 6. Policy for Deciding on the Merits

The final *Eitel* factor examines whether the policy of deciding a case based on its merits precludes entry of default judgment. *Id.* In *Eitel*, the Ninth Circuit acknowledged that, the general rule is that default judgements are ordinarily disfavored and that courts should decide cases on their merits whenever possible. *Id.* However, courts have also recognized that the mere existence of Rule 55(b) indicates that the preference for a decision on the merits, standing alone, is not dispositive. *See, e.g., Bd. of Trustees of Auto. Indus. Welfare Fund v. Concord Car, Inc.*, No. C 95-4039, 1996

1  WL 382845, at *2 (N.D. Cal. July 1, 1996). When a party fails to defend against an action and
2  delays a decision on the merits, as is the case here, then the preference does not preclude the Court
3  from granting default judgment. *Id*. Because Defendant has failed to participate in this lawsuit by
4  appearing and filing an answer to Plaintiff's Complaint, a decision on the merits would be
5  impracticable, if not impossible. *Id.* Thus, this factor weighs in favor of entry of default judgment.

### 7. Conclusion

Based on this analysis, the undersigned finds that the *Eitel* factors weigh in favor of an entry of default judgment against Defendant. Accordingly, the undersigned shall now determine the appropriate damages that should be awarded to Plaintiff.

### D. Damages

ERISA § 515 obligates participating employers under the CBA and Trust Agreement "to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145. By failing to make contributions to the Pension Fund from November 2009 to March 2010, Defendant has violated ERISA § 515. Thus, ERISA § 502(g)(2) provides for the entry of judgment against Defendant for payment of the unpaid contributions, interest, liquidated damages, reasonable attorney's fees and costs, and other appropriate legal or equitable relief.

An award under ERISA § 502(g)(2) is mandatory if the following requirements are satisfied: (1) the employer is delinquent at the time the action is filed; (2) the district court has entered a judgment against the employer; and (3) the plan provides for such an award. *Northwest Adm'rs, Inc. v. Albertson's, Inc.*, 104 F.3d 253, 258 (9th Cir.1996) (quoting *Carpenters Amended and Restated Health Benefit Fund v. John W. Ryan Constr. Co., Inc.*, 767 F.2d 1170, 1175 (5th Cir.1985)) ("[M]andatory fees are available under § 1132(g)(2) 'notwithstanding the defendant's post-suit, pre-judgment payment of the delinquent contributions themselves.'"); *Idaho Plumbers & Pipefitters Health & Welfare Fund v. United Mechanical Contractors, Inc.*, 875 F.2d 212, 215-16 (9th Cir. 1989) ("[W]hen (1) the fiduciary obtains a judgment in favor of the plan, (2) unpaid contributions

exist at the time of suit, and (3) the plan provides for liquidated damages," section 1132(g)(2) is triggered and a liquidated damage award is mandatory.).  Courts have held that a plaintiff may receive a judgment for contributions which became due after the lawsuit was filed and remained unpaid at the time of the judgment.  *See Iron Workers Dist. Council v. Hudson Steel Fabricators & Erectors, Inc.*, 68 F.3d 1502, 1507 (2nd Cir.1995) ("the amount of an award of interest or liquidated damages should logically be predicated upon the amount of the unpaid contributions originally at issue, whether or not outstanding at the time of judgment, since that amount correctly measures the damage caused by the delinquency."); *Board of Trustees of the Sheet Metal Workers v. General Facilities, Inc.*, 2003 WL 1790837, * 2 (N.D. Cal. March 31, 2003) (citing *Carpenters & Joiners Welfare Fund v. Gittleman Corp.*, 857 F.2d 476, 478 (8th Cir. 1988)) ("Section 1132 provides for liquidated damages as a percentage of 'unpaid contributions' and courts have interpreted 'unpaid contributions' to mean contributions owing and unpaid at the time the lawsuit is filed.").

### 1. Unpaid Contributions and Liquidated Damages

Here, as discussed above, Plaintiff has satisfied all of the statutory requirements and is entitled to relief for all unpaid contributions, plus interest and liquidated damages, that have not been satisfied.  Based on the monthly reports of hours worked by Defendant's employees each month, and under the CBA, Trust Agreement, and Delinquency Procedures, Defendant currently owes the Pension Fund the following:

a. Approximately $27,068.85 in past due contributions for November 2009 through March 2010;

b. Approximately $2,859.90 in interest calculated based on an interest rate of twelve percent (12%) from the delinquency date through November 18, 2010 on all past due contributions from September 2009 through March 2010;

c. All interest that has accrued since November 18, 2010 until the past due contribution amount is paid to the Pension Fund;

d. Approximately $8,311.81 in liquidated damages calculated based on a liquidated damages rate of twenty percent (20%) from the delinquency date through November

|   |   |   |
|---|---|---|
| 1 |   | 18, 2010 on all past due contributions from September 2009 through March 2010; |
| 2 |   | and |
| 3 | e. | All liquidated damages that have accrued since November 18, 2010 until the past due |
| 4 |   | contribution amount is paid to the Pension Fund |

(Delinquency Calculations, Exhibit 1, Dkt. #20.) Based on these calculations, the undersigned finds an award of $38,240.56 for delinquent contributions, interest and liquidated damages is proper and recommends that the District Court award the full amount to Plaintiff.

2. Attorney's Fees and Costs

Pursuant to the CBA and the Trust Agreement and under ERISA § 502(g)(2), Defendant is responsible for paying the Board for the attorney's fees and expenses it incurred to enforce collection of delinquent contributions. Since March 5, 2010 through November 18, 2010, Plaintiff claims that it has incurred $26,707.50 in attorney's fees and costs in attempting to resolve Defendant's delinquency and in bringing this lawsuit. The work performed by legal counsel for the Board included (a) contacting Defendant via letters, emails, and telephone calls; (b) determining the extent and amount of the delinquency; (c) preparing and filing the initial complaint and other case-initiating documents; (d) preparing the Request for Entry of Default; (e) preparing the Motion for Default Judgment in this action; and (f) preparing Proposed Findings of Facts and Conclusions of Law. (*See* Trucker Huss Billing Records, Exhibit 2, Dkt. #20.)

In reviewing the submitted billing records, the undersigned notes that Plaintiff's counsel has spent a considerable amount of time in resolving Defendant's delinquency, and finds that the requested fees and costs were reasonable in light of Defendant's continuing violation of ERISA, the CBA, and the Trust Agreement. Based on declarations submitted by Plaintiff in support of its motion for default judgment, the undersigned finds the rates charged by Trucker Huss attorneys for this matter are reasonable rates that are in line with those prevailing in the San Francisco Bay Area for similar services of lawyers of reasonably comparable skill and reputation. (*See* Docket #13, C. Mark Humbert Declaration at ¶¶10-11; Docket #12, Michelle L. Schuller Declaration at ¶¶10-17.) The Board has also submitted a copy of attorney billing to date related to Defendant's delinquency

in support of the Board's request for an award of attorney's fees and costs.  (*See* Exhibit 2, Dkt. #20.)  The time spent on matters relating to Piedmont Lumber's delinquency appears reasonable.  The undersigned therefore recommends that the District Court award Plaintiff $26,707.50 in attorney's fees and costs.

**E.     Audit and Continuing Obligations under the CBA and Trust Agreement**

In addition to recovery of the principal amount of delinquent contributions, liquidated damages, interest on the principal amounts of contributions and on liquidated damages and attorney's fees and costs, the Pension Fund also seeks default judgment in the form of orders compelling Defendant to: (a) submit to an audit by the Pension Fund, at Defendant's expense, to determine the extent of Defendant's delinquency and ability to meet its obligations under the CBA and the Trust Agreement; and (b) perform and continue performing its obligations under the CBA and the Trust Agreement.  Pursuant to Article III, Section 5 of the Trust Agreement, the Pension Fund has the authority to audit contributing employers by giving the Board the power to "examine and copy any such books, records, papers or reports of such individual employer as may be necessary to determine whether the individual employer is making full and prompt payment of all sums required to be paid by him or it to the Pension Fund."

The undersigned finds Plaintiff's request reasonable in light of Defendant's ongoing obligation to make contributions and to submit reports of hours to the Pension Fund in accordance with the CBA and the Trust Agreement and Defendant's demonstrated failure to make timely and complete contributions to the Pension Fund.  Accordingly, the undersigned recommends that the District Court order that Defendant: (a) submit to an audit by the Pension Fund, at Defendant's expense, to determine the extent of Defendant's delinquency and ability to meet its obligations under the CBA and the Trust Agreement; and (b) perform and continue performing its obligations under the CBA and the Trust Agreement in the event that there are employees of Piedmont Lumber who continued to perform work covered under the CBA after March 2010.

## IV.   CONCLUSION

Based on the foregoing analysis, the Court **RECOMMENDS** that the District Court

**GRANT** Plaintiff's Motion for Default Judgment as follows:

1) award Plaintiff $38,240.56 for delinquent contributions, interest and liquidated damages;

2) award Plaintiff $26,707.50 in attorney's fees and costs; and

3) order that Defendant: (a) submit to an audit by the Pension Fund, at Defendant's expense, to determine the extent of Defendant's delinquency and ability to meet its obligations under the CBA and the Trust Agreement; and (b) perform and continue performing its obligations under the CBA and the Trust Agreement in the event that there are employees of Piedmont Lumber who continued to perform work covered under the CBA after March 2010.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b)(2), a party may serve and file objections to this Report and Recommendation 14 days after being served.

**IT IS SO ORDERED.**

Dated: November 29, 2010

_____
Maria-Elena James
Chief United States Magistrate Judge